IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE FOREIGN CANDY COMPANY, INC., )
               Plaintiff, )
)
vs ) Civil Action No. 10-999
)
R.L. ALBERT & SON, INC., )
               Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to transfer this action to the United States District Court for the District of Connecticut (Bridgeport Division) (Document No. 11) be granted.

II. Report:

Presently before the Court is the defendant's motion to transfer venue to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a). For reasons discussed below, the defendant's motion to transfer venue should be granted.

The plaintiff, The Foreign Candy Corporation, Inc. ("TFCC"), commenced this action for trademark infringement, false designation of origin and unfair competition against the defendant, R.L. Albert & Son, Inc. ("R.L. Albert"). TFCC is an Iowa corporation with a principal place of business in Hull, Iowa, where it is engaged in the business of importing, distributing and selling candy products (Complaint at ¶ 2). R.L. Albert is a New York corporation, having its principal place of business in Stamford, Connecticut (Declaration of

Robert Katz at ¶ 3).[1]

According to the complaint, TFCC is the owner of several Registered Trademarks, including the Trademarks "RIPS", Registration No. 2,848,847, and "RIP ROLLS", Registration No. 2,763,991 (collectively, the "RIP Marks"), which are valid, subsisting and exclusively owned by it (Complaint at ¶ 3). Since about 2003, TFCC has used the RIP marks on candy products it distributes to identify and distinguish its candy from candy products made, sold and offered by others (Id. at ¶ 7). TFCC's RIP brand candy products have gained significant recognition in the confectionary industry and among consumers as strong indicators of quality candy (Id.).

TFCC contends that R.L. Albert infringes its RIP Marks by using a "RIP-ITZ" Mark in connection with the sale, offering for sale, distribution and advertising of candy that is the same type and flavor as its candy (Id. at ¶ 4); that since at least June 2010, R.L.Albert's use of the RIP-ITZ Marks has been without authorization (Id. at ¶ 11); that the defendant's infringing RIP-ITZ Mark is confusingly similar to TFCC's RIP Marks and has caused consumer confusion (Id. at ¶¶ 4, 13-16); and that R.L. Albert's products are an inferior quality to those sold in conjunction with TFFC's RIP Marks, all to the plaintiff's detriment (Id. at ¶ 17).

Due to the defendant's complained-of acts, TFCC asserts causes of action against it for federal trademark infringement (Count I) and false designation of origin (Count II) under the Lanham Act, 15 U.S.C. § 1051, et seq., as well as unfair competition (Count III) and common law trademark infringement (Count IV) under the Pennsylvania Trademark Act, 54 Pa.C.S. § 1101, et seq. The Court's federal question and diversity jurisdiction are invoked.

---

1. The Declaration of Robert Katz is attached as Exhibit A to the defendant's memorandum of law in support of its motion to transfer.

In response to the complaint, R.L. Albert has moved to transfer venue to the District of Connecticut pursuant to 28 U.S.C. § 1404(a). In support of its motion, R.L. Albert has submitted the declaration of Robert Katz, its Chief Executive Officer (Katz Declaration at ¶ 1).

Mr. Katz asserts in his declaration that R.L. Albert does not own, and has never owned any property in Pennsylvania and has never maintained any offices or facilities in Pennsylvania; that it has no employees who reside in this district; and that only a single sale of the subject product -- in the amount of $141.00 -- occurred within the Western District of Pennsylvania (Id. at ¶¶ 4-6).

Mr. Katz further declares that most of the alleged activities giving rise to the claims in this suit occurred in Stamford, Connecticut or elsewhere in Connecticut. Specifically, Katz states that the subject product and trademarks were developed by R.L. Albert at its Stamford, Connecticut headquarters, and that is where all of its orders were accepted and processed; that the products bearing the subject marks were shipped by R.L. Albert (from a central distribution center located in Elizabeth, New Jersey) pursuant to directives originating from its Stamford headquarters; that all of the documents related to these activities are centrally stored and maintained at its headquarters in Stamford; and that all witnesses with material knowledge of its relevant activities are located in Stamford, Connecticut (Id. at ¶¶ 7-11).

For these reasons, the defendant avers that this action should be transferred to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a). It is provided in § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A Court has broad discretion in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a). Saint-Gobain Calmar, Inc. v. National Products Corp., 230 F.Supp.2d 655, 658 (E.D.Pa. 2002), citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973). "To justify a transfer under [§ 1404(a)], the moving party must show that venue is proper in the transferee district, and that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." Matt v. Baxter Healthcare, 74 F.Supp.2d 467, 468 (E.D.Pa. 1999). Clearly, this action "might have been brought" in the District of Connecticut, as the defendant resides there, and a substantial part of the events giving rise to this case occurred there. See, 28 U.S.C. § 1391.

Still, it is the movant's burden to show that the balancing of interests weigh in favor of transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995), citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). Unless the balance is strongly in favor of transfer, the plaintiff's choice of forum will stand. Shutte, supra, 431 F.2d at 25. In determining whether to transfer an action, several private and public factors should be weighed, including: (1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the extent to which witnesses may be unavailable for trial in one fora; (6) the extent to which books and records cannot be produced in one fora; (7) practical considerations which will make trial of a case easy, expeditious and inexpensive; and (8) the local interest in deciding the controversy. Jumara, supra, 55 F.3d at 879-880.

The plaintiff has chosen to litigate its claims in the Western District of Pennsylvania. Generally, when assessing a transfer motion, "a plaintiff's choice of forum is a

paramount consideration which should not be lightly disturbed". Weinstein v. Friedman, 859 F.Supp. 786, 788 (E.D.Pa. 1994). However, in cases where the plaintiff chooses a forum outside of its state of residence, as here, "a plaintiff's choice of forum is given less deference". WellPet, LLC v. Midwestern Pet Foods, Inc., 2009 WL 5111790, *2 (M.D.Pa., Dec. 16, 2009) (citing cases). Further, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." Ricoh Co., LTD. v. Honeywell, Inc., 817 F.Supp. 473, 481 (D.N.J. 1993). Accord, Sarver v. Hurt Locker, LLC, 2010 WL 4810813, *3 (D.N.J., Nov. 18, 2010).

Here, as discussed above, TFCC is an Iowa corporation with a principal place of business in Hull, Iowa, and its claims of trademark infringement and unfair competition principally arise from the defendant's alleged misconduct in Stamford, Connecticut, where it developed the allegedly infringing marks and products, accepted and processed all orders, and shipped products bearing the subject marks (Katz Declaration at ¶ 8). Based on these facts, the plaintiff's choice of forum is not entitled to great deference.[2]

Other factors mentioned by our Court of Appeals in Jumara, such as the defendants' forum preference, the place where the claim arose, and the local interest in deciding

---

2. We note that in a Lanham Act trademark infringement case, the focus of a venue inquiry "is the location where the unauthorized passing off takes place whether that occurs solely within one district or in many." Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994). Clearly, the propriety of venue in this district is not at issue. However, to the extent that a defendant's actions are said to constitute infringement, a substantial amount of its alleged 'passing off' will necessarily have occurred in the district where its product was manufactured and marketed. See, Capp, Inc. v. Dickson/Unigage, Inc., 2004 WL 339672, *3, n.2 (E.D.Pa., Feb. 19, 2004). Further, as the defendant explains, every allegedly infringing sale originated in Connecticut, as it accepted and processed all orders at its Stamford, Connecticut headquarters, and it shipped the products bearing the subject marks pursuant to directives originating from its headquarters (Katz Declaration at ¶ 8).

5

the controversy favor a transfer. Clearly, the District of Connecticut is the forum preference of the defendant, and as discussed above, that is where most of its alleged misconduct occurred.

It also appears that the District of Connecticut has a greater interest in adjudicating this case, since one of the litigants, R.L. Albert, resides there, whereas no party resides in this district. Indeed, the parties' only connection with this forum appears to be one sale of the defendant's product made here in the amount of $141.00, and the fact that plaintiff's counsel has offices in Pittsburgh. Although plaintiff's counsel has offices in this district, "the location or convenience of litigation counsel does not merit consideration in a discretionary transfer evaluation." U.S., ex rel. FLFMC, Inc. v. Ohio Art Co., supra 2010 WL 3155160, *2 (W.D.Pa., July 30, 2010), citing Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973). As for the $141.00 sale of the defendant's product in this district, the defendant avers that it represents less than one quarter of one percent (0.25%) of its total sales of the allegedly infringing product.[3] Based on such minimal sales in this district, the local interest in deciding the controversy is small. See, Sun Chemical Corp. v. Markem Corp., 2006 WL 288104, *4 (D.N.J. 2006). In contrast, the defendant has its principal place of business in Stamford, Connecticut (Katz Declaration at ¶3), its headquarters are there, it employs personnel at its headquarters in Stamford, its subject product and marks were developed at its Stamford headquarters, and that is where all of its orders were accepted and processed (Id. at ¶¶ 8-11). Based on these facts, the District of Connecticut has a greater interest in deciding this case.

With respect to other pertinent factors, we are not aware of any witnesses who may be unavailable for trial in one of the fora. However, it appears that most potential witnesses,

---

3. See, defendant's reply memorandum of law at p. 5.

including all witnesses with material knowledge of the defendant's relevant activities, are located in Stamford, Connecticut at its headquarters (Katz Declaration at ¶ 10). For them, the District of Connecticut is clearly a more convenient forum.[4]

In addition, the District of Connecticut is a more convenient forum for the parties as indicated by their relative physical and financial circumstances. That is because the defendant has its principle places of business in Stamford, Connecticut, and the parties are presently involved in related litigation there. The record shows that defendant R..L. Albert has filed a related lawsuit against the plaintiff in the United States District Court for the District of Connecticut alleging trademark infringement and false designation of origin under the Lanham Act, as well as common law unfair competition and unfair trade practices.[5] As such, it would be more convenient for the parties to litigate their disputes in one forum, where the defendant resides, than in two separate fora -- especially since this district is the home of neither. Clearly, "[t]he interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending." LG Elec. Inc. v. First Int'l. Computer, 138 F.Supp.2d 574, 592 (D.N.J. 2001).

Concerning the location of books and records, all material documents pertaining to the defendant's relevant activities are located at its headquarters in Stamford, Connecticut, and that is where all documents related to its pertinent activities are maintained (Id. at ¶¶ 9,11). In Jumara, the Court stated that the location of books and records is relevant only to the extent they could not be produced in the alternative forum. 55 F.3d at 879. Since all relevant records in this case could presumably be produced in either proposed forum, this factor is not determinative.

---

4. At this juncture, the plaintiff has not proffered the name or location of any potential witnesses.
5. See, Exhibit B attached to the defendant's memorandum of law in support of its motion to transfer venue.

The United States Supreme Court has stated: "the purpose of [section 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Here, having weighed the relevant factors, and in the interest of convenience to most potential witnesses -- who are said to be located in Stamford, Connecticut -- this action should be transferred to the District of Connecticut. As discussed above, that is also the forum preference of the defendant, it is the forum with the greatest interest in this dispute, and it is where most of the defendant's alleged illicit conduct occurred. In addition, judicial efficiency would be served by transferring this case to the District of Connecticut, as a related action involving the parties is pending there. While the plaintiff chose to litigate its claims in this forum, it is an Iowa corporation, with its principal place of business in Hull, Iowa. Thus, its choice of forum is not entitled to great deference. WellPet, LLC, supra, 2009 WL 5111790, at *2.

Therefore, since the balancing of interests strongly favors a transfer, it is recommended that the defendant's motion to transfer this case to the United States District Court for the District of Connecticut (Bridgeport Division) (Document No. 11) be granted.

Within fourteen (14) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

    Respectfully submitted,

    s/ ROBERT C. MITCHELL
    United States Magistrate Judge

Dated: March 1, 2011